CLERKS OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
9/27/17
JULIA C. DUDLEY, CLERK
BY: s/ K. DOTSON
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| **TINA RAY**, | ) |
| | ) |
| Plaintiff, | ) Civil Action Filing No.: 5:17cv00093 |
| | ) |
| v. | ) |
| | ) |
| **MICHAEL ROANE**, | ) |
| in his individual capacity, | ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |

## COMPLAINT

Plaintiff, **Tina Ray**, through her undersigned attorney, files this Complaint involving Michael Roane, a law enforcement official, who violated Plaintiff's constitutional rights. Plaintiff will use 42 U.S.C. § 1983 and state law as the vehicles to vindicate her rights under the Fourth and Fourteenth Amendments to the United States Constitution, and to redress the deprivation of her Constitutional rights by Roane. In support of her Complaint, Ms. Ray alleges the following:

## PRELIMINARY STATEMENT

1.

Michael Roane is a rogue police officer who acts as if he answers to no one but himself. He constantly abuses his authority in both unethical and unlawful

Case 5:17-cv-00093-EKD-JCH   Document 1   Filed 09/27/17   Page 2 of 20   Pageid#: 2

ways. Now, there's a public outcry: Roane has unreasonably executed a beloved pet, by calmly stepping to Ms. Ray's dog ("Jax"), placing his gun to Jax's head, and then blowing his brains out execution style. At that time, Jax was on a lead being held by Ms. Ray and Roane had zero fear of Jax.

2.

On a peaceful Sunday morning, four deputies drove up Ms. Ray's long driveway and walked across her extensive front yard to serve her with a warrant regarding an ongoing domestic dispute with her husband, who had been routinely drunk and belligerent towards Ms. Ray. Jax, a seven-year-old, 150-pound German Shepard, was at rest in his play area, lying down, chewing on his toy in Ms. Ray's expansive front yard, restrained by the zip-lead connected by two robust, well-spaced trees. Ms. Ray and her friend Stephanie greeted the deputies and the deputies saw Jax, so they initially approached cautiously. That caution eased however due to Jax's friendly disposition; each of the four deputies took turns petting Jax as they spoke to Ms. Ray.

3.

The peace was short lived, however, as Defendant Michael Roane, for no apparent reason, came barreling up Ms. Ray's driveway in his police truck like a bat out of hell, screeching to a halt directly under Jax's zip-lead—in the far right

2

inside of Jax's play area. Ms. Ray immediately began shouting Jax's name and running to the zip-lead to tug on it and get Jax's attention. At the same time, all four deputies shouted at Roane, saying, "Wait! Wait! Let her get her dog! Let her get her dog!" Instead of waiting, or parking in the driveway like the four deputies, Roane got out of his car in the middle of Jax's play area, slammed the door, and started towards the house.

4.

Alarmed at Roane's threatening and aggressive behavior, Jax began barking while approaching Roane. In response, Roane began moving backwards towards his truck, pulling his gun out. In a short moment Jax had reached the end of his line and could not get any closer to Roane. At that point, Roane stopped backing up because he both saw that (1) Jax could not get any closer, and (2) Ms. Ray was holding on the fully-extended zip-lead and yelling Jax's name. *Roane then calmly, with an expressionless face, took a step towards the dog so that he stood over Jax, then, Roane put his gun to the dog's head at point blank range, and shot Jax in the head – execution style.*

5.

Ms. Ray, her friends, and the four deputies watched in horror as Jax flopped around on the ground, dying before their eyes. In a world of his own,

drunk and emboldened with power, Roane began walking calmly toward the house. "At least put him out of his misery," one of the deputies pleaded with Roane — as Jax lay flopping around in agony, dying in his play area. Roane looked back, saw Jax suffering as he lay dying, and callously stated: "Sometimes they do that."

6.

Immediately after hearing of the incident, Roane's superior placed him on leave. Since then, there has been community outrage. The next day, Sheriff Smith came to Ms. Ray's home to personally apologize for Roane's actions. Ms. Ray files this action seeking a semblance of relief from the chilling, remorseless and patently unreasonable violations of her rights by Roane.

## PARTIES

7.

At all times relevant to this Complaint, Plaintiff Tina Ray was a citizen of the United States and a resident of Virginia. Ms. Ray, at all times relevant to this Complaint, had clearly established legal rights under state and federal law and the United States Constitution. Ms. Ray submits herself to the jurisdiction and venue of this Court and is entitled to bring this action under state and federal law

for all general, special, compensatory, punitive, and any other permissible damages.

8.

At all times relevant to this Complaint, Defendant Michael Roane was a United States citizen, a Virginia resident, a sworn Deputy of the Augusta County Sheriff's Office, and a supervisory member of the cross-jurisdictional drug task force. At all relevant times to this Complaint, Roane was acting under the color of state law. At all relevant times, Defendant Roane was subject to the laws of the Commonwealth of Virginia and the Constitution of the United States. At all relevant times, Roane was responsible for knowing and acting in accordance with all policies, procedures, orders, special orders, general orders, guidelines and regulations of the Augusta County Sheriff's Office. Ms. Ray is using 42 U.S.C § 1983 as the vehicle to sue Roane in his individual capacity regarding federal claims.

**JURISDICTION AND VENUE**

9.

This Court has original subject matter jurisdiction over the federal claim in this action, in accordance with 28 U.S.C. § 1331, because the claim raises a federal

question, under the laws and Constitution of the United States. This Court has supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367.

10.

This Court has personal jurisdiction over the Defendant because he is domiciled in Virginia.

11.

Venue is proper in the Western District of Virginia under 28 U.S.C. § 1391(b)(1) because the Defendant resides in this District and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

**STATEMENT OF FACTS**

12.

On Sunday, September 24, 2017, at approximately 11:30 a.m., four deputies of Augusta County Sheriff's Office drove to Tina Ray's residence.

13.

The four deputies drove to the residence seeking to serve Ms. Ray an arrest warrant regarding a charge of domestic abuse related to Ms. Ray's husband.

14.

Ms. Ray's husband has been physically abusive throughout their marriage.

15.

When the four deputies arrived at Ms. Ray's residence, they noticed that Ms. Ray had a pet dog Jax, a German Shepard, on a zip-lead secured between two trees in the front yard.

16.

At all times relevant to this Complaint, Ms. Ray was the owner of Jax, and she considered Jax to be a member of her family.

17.

As the four deputies arrived, they parked their police cars in the driveway.

18.

Ms. Ray's yard was very large, containing a trampoline and a swimming pool.

19.

Ms. Ray was calm and friendly with the officers.

20.

Jax was a German Shepard that weighed approximately 150 pounds.

21.

At all times relevant to this Complaint, Jax was restrained by a 25-ft. zip-cord lead that was attached to two sturdy trees in her front yard, which permitted the dog to play in the yard in a controlled manner.

22.

At all times relevant to this Complaint, Ms. Ray maintained control of her dog, and the four deputies observed Ms. Ray maintain control of her dog.

23.

The dog was very friendly to the deputies, evidenced by the fact that all four deputies took turns petting Jax and Jax never tried to bite the deputies.

24.

While the four deputies were calmly petting the dog and talking to Ms. Ray, Officer Roane drove up to Ms. Ray's residence at relatively high speed in his police truck.

25.

Before Roane drove up to the residence, Jax was laying down in the yard chewing on his toy.

26.

Instead of parking his police car on the street like the four deputies had done, Roane sped up to the residence and did not slow down as he drove down Ms. Ray's driveway and stopped suddenly in Ms. Ray's yard—directly next to one of the trees that was connected to the lead that restrained Jax to Ms. Ray's yard.

27.

Before Roane exited his vehicle, all four of the deputies present immediately yelled and signaled to Roane, saying things like "Wait! Wait! Let her get her dog! Let her get her dog!" and Roane heard the deputies and saw their signals.

28.

Seeing that Roane had abruptly parked in Jax's area, Ms. Ray immediately ran to the zip-lead while yelling Jax's name.

29.

Roane got out of his truck and slammed the door, and after that, Jax began barking at and approaching Roane.

30.

Roane started moving backwards away from Jax—while still facing Jax—as Jax approached Roane, barking. Jax was not running Roane down in a sprint or anything close to that.

31.

As Roane moved backwards, Jax reached the end of his lead.

32.

Once Jax reached the end of his lead, he could no longer reach Roane by any means.

33.

As Roane moved backwards, Ms. Ray held onto the fully-extended lead and yelled, "Jax! Jax! It's OK! Come here!"

34.

When Jax reached the end of the lead, Roane saw that Jax reached the end of the lead.

35.

When Jax reached the end of the lead, Roane saw that the dog could no longer approach Roane.

36.

When Jax reached the end of the lead, Roane saw that the dog could no longer reach Roane by any means.

37.

When Jax reached the end of the lead, Roane saw that Ms. Ray was holding onto the fully extended lead.

38.

When Jax reached the end of the lead, Roane heard and saw Ms. Ray shouting Jax's name and summoning him to come to her.

39.

When Jax reached the end of the lead, and after Roane saw that Jax could not each Roane by any means, and after Roane saw Ms. Ray holding Jax's lead and summoning Jax, **Roane then calmly, with an expressionless face, took a step towards the dog so that he stood over Jax, then, Roane put his gun to the dog's head at point blank range, and shot Jax in the head, execution style.**

40.

Ms. Ray watched Roane put his gun to her dog's head at point blank range, and shoot him, execution style.

41.

Ms. Ray watched Jax suffer, dying in the yard, while his body flopped around until he was dead.

42.

The four deputies watched the incident unfold, and watched Roane shoot Jax while Jax was at the end of his lead and could not reach Roane.

43.

Roane then immediately walked up to Stephanie and yelled "What did you expect me to do? He was going to bite me."

44.

Officers told Roane, "At least put him out of his misery." Roane turned around and saw the dog flopping around. Roane then said, "they'll do that sometimes," and continued walking toward the residence.

45.

Witnesses, other than deputies, saw this incident and noted that Roane stepped towards Jax and shot Jax at point blank range with an expressionless face and calm poise – all the while noting that Roane was at the end of his lead and that Jax could not reach Roane.

46.

Three of the four deputies turned their backs to Roane in shock and disgust.

47.

In addition to the four deputies, three civilians witnessed Roane shoot Jax while Jax was at the end of its lead: Stephanie (a friend of Ms. Ray), a neighbor, and a man who had been working on Ms. Ray's roof when the deputies arrived.

48.

The civilian witnesses screamed in horror at the sight of Roane shooting Jax.

49.

Officer Wills, one of the four deputies, said that what Roane did wasn't something one would even see in a movie.

50.

Ms. Ray was emotionally devastated by watching Roane shoot and kill her dog.

51.

Shortly after watching her dog die after Roane shot him in the head, Ms. Ray's neighbor and the man working on her roof buried the dog. Ms. Ray was then arrested pursuant to the arrest warrant.

52.

Immediately following the incident, Roane was placed on administrative leave.

53.

The next day, the Sheriff Smith came to Tina's house and apologized for Roane's actions and said that Roane's actions were wrong.

54.

While at Ms. Ray's residence, Sheriff Smith told Ms. Ray that he wanted to see if he could find the shell casing. Ms. Ray picked up the lead and walked it as far as it could go in the direction of where Jax was shot. Once the lead would not go any further, Ms. Ray stopped walking, and Smith looked down and found the shell casing that came from the round that was fired into Jax's head. Smith picked up the shell casing and put it in his pocket.

**COUNT ONE (FEDERAL CLAIM)**
**42 U.S.C. § 1983—FOURTH AMENDMENT VIOLATION REGARDING DEFENDANT ROANE'S UNLAWFUL SEIZURE OF MS. RAY'S PERSONAL PROPERTY**

55.

Ms. Ray hereby reiterates and incorporates by reference the allegations contained in paragraphs 1-54 as if set forth fully herein to support this Count.

56.

At all times relevant to this Complaint, Ms. Ray had a clearly established right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizure of her personal property by law enforcement officers such as Defendant Roane, and Ms. Ray had a possessory interest in her dog pursuant to Va. Code 3.2-6585.

57.

***Based on all facts that have been incorporated to support this Count***, Roane unlawfully seized Ms. Ray's property because, inter alia, Roane calmly shot Ms. Ray's dog in the head after observing that the dog was at the end of its lead and did not pose immediate danger, and after observing Ms. Ray looking on, obviously desirous of retaining custody of her dog.

58.

Due to Roane's unlawful conduct, based on the facts incorporated into this count and the allegations within this count, Ms. Ray is entitled to all allowable damages under law.

## COUNT TWO (FEDERAL CLAIM)
## <u>42 U.S.C. § 1983 — SUBSTANTIVE DUE PROCESS</u>

59.

Ms. Ray hereby reiterates and incorporates by reference the allegations contained in paragraphs 1-54 as if set forth fully herein to support this Count.

60.

At all times relevant to this Complaint, Ms. Ray had a clearly established property interest in her dog pursuant to Va. Code 3.2-6585 and a clearly established right under the Fourteenth Amendment to the United States Constitution to be free from deprivation of her personal property by law enforcement officers such as Defendant Roane.

61.

***Based on all facts that have been incorporated to support this Count***, Roane unlawfully deprived Ms. Ray of her property interest in her dog because, inter alia, Roane calmly shot Ms. Ray's dog in the head after observing that the dog was at the end of its lead and did not pose immediate danger, and after observing Ms. Ray looking on, obviously desirous of retaining custody of her dog. Because Roane's act of shooting and killing Ms. Ray's dog did not serve a

compelling governmental interest—or any legitimate governmental interest—Roane violated her substantive due process rights.

62.

Due to Roane's unlawful conduct, based on the facts incorporated into this count and the allegations within this count, Ms. Ray is entitled to all allowable damages under law.

### COUNT THREE (STATE CLAIM)
### <u>CONVERSION</u>

63.

Ms. Ray hereby reiterates and incorporates by reference the allegations contained in paragraphs 1-54 as if set forth fully herein.

64.

*__Based on all facts that have been incorporated to support this Count__*, Roane intentionally shot and killed Ms. Ray's dog without any lawful justification, permanently depriving her of her personal property. As such, Roane is liable to Ms. Ray for the intentional tort of conversion under Virginia law.

17

65.

Due to Roane's unlawful conduct, based on the facts incorporated into this count and the allegations within this count, Ms. Ray is entitled to all allowable damages under law.

## COUNT FOUR (STATE CLAIM)
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

66.

Ms. Ray hereby reiterates and incorporates by reference the allegations contained in paragraphs 1-54 as if set forth fully herein.

67.

*Based on all facts that have been incorporated to support this Count*, Roane intentionally shot and killed Ms. Ray's dog without any lawful justification, as he saw Ms. Ray look on, and Ms. Ray suffered severe emotional distress as a result. As such, Roane is liable to Ms. Ray for the intentional tort of intentional infliction of emotional distress under Virginia law.

68.

Due to Roane's unlawful conduct, based on the facts incorporated into this count and the allegations within this count, Ms. Ray is entitled to all allowable damages under law.

## ATTORNEY FEES

69.

Plaintiff is entitled to reasonable attorney fees under applicable federal and state law.

## PUNITIVE DAMAGES

70.

The wrongful conduct of Defendant arose to a level that entitles Plaintiff to punitive damages under applicable law regarding her claims.

## PRAYER FOR RELIEF

**WHEREFORE**, Ms. Ray respectfully prays for the following relief:

1. That this Court exercise jurisdiction over this case and grant a jury trial;

2. That this Court decide, as a matter of law, all issues not required to be determined by a jury;

3. That this Court award all permissible damages recoverable from the Defendant, including general, special, compensatory, punitive, and any other damages deemed appropriate, in an amount to be determined at trial;

4. That this Court permit recovery of reasonable attorney's fees and costs in an amount to be determined by this honorable Court under applicable law; and

5. That this Court grant any additional relief that this Honorable Court deems appropriate under the circumstances.

Respectfully submitted on this 27th day of September, 2017,

<div style="text-align: right;">

s/Mario B. Williams
Mario B. Williams (VSB # 91955)

</div>

**NEXUS CARIDADES ATTORNEYS, INC.**
44 Broad St. NW, Suite 200
Atlanta, GA 30303
404-654-0288/703-935-2453 FAX
mwilliams@nexuscaridades.com
mario@goodgeorgialawyer.com