IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| TINA RAY,<br><br>Plaintiff<br>v.<br><br>MICHAEL ROANE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br>Civil Action No. 5:17cv00093 |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant Augusta County Deputy Sheriff Michael Roane, by counsel, submits this memorandum in support of his motion to dismiss this action brought by plaintiff Tina Ray.

Deputy Roane is also separately filing at this time an Answer (with Exhibits) to the Complaint, and a motion pursuant to Rule 7(a)(7) and Rule 12(a)(1)(C) of the Federal Rules of Civil Procedure, with a separate supporting memorandum, requesting that the Court issue an Order requiring plaintiff to reply to Deputy Roane's Answer.

The Complaint alleges that the plaintiff was deprived of "her property interest in her dog," asserting 42 U.S.C. § 1983 claims for alleged violation of the Fourth and Fourteenth Amendments (asserting seizure of plaintiff's "personal property," and violation of "substantive due process"), and state law claims of conversion and intentional infliction of emotional distress.[1]

**ALLEGATIONS**

The Complaint alleges that Michael Roane is a "supervisory member of the cross-jurisdictional drug task force" and a Deputy of the Augusta County Sheriff's Office.[2] The

[1]Complaint ¶¶ 56, 60-61, 64.

[2]*Id.* ¶ 8.

Complaint alleges that on September 24, 2017, four Deputies arrived at the plaintiff's residence in order to serve her with an arrest warrant for domestic abuse related to her husband.[3]

The Complaint alleges that Deputy Roane subsequently arrived at the plaintiff's residence, and "abruptly parked"[4] "in the middle of [the] play area"[5] of plaintiff's "150-pound German Shepard"[6] – "directly next to one of the trees that was connected to the lead that restrained [the dog] to [plaintiff's] yard."[7] The Complaint alleges that the 150-pound German Shepard was attached to a "25-ft. zip-cord lead" that ran between two trees in the plaintiff's large yard, "which permitted the dog to play in the yard," without any allegation that the zip line between the trees limited the dog to less than the run of the yard.[8] The Complaint alleges that Deputy "Roane got out of his truck and slammed the door," and "started towards the house," which "[a]larmed" the dog and it "began barking at and approaching Roane," who "started moving backwards away from [the dog]" as the dog "approached Roane, barking," only then pulling his gun. The Complaint alleges Deputy Roane fired one shot at the dog due to the imminent threat to his safety in that moment because the dog was going to bite him, as the Complaint alleges he said at that time.[9]

---

[3] *Id.* ¶ 13.

[4] *Id.* ¶ 28.

[5] *Id.* ¶ 3.

[6] *Id.* ¶¶ 2, 20.

[7] *Id.* ¶ 26.

[8] *Id.* ¶¶ 18, 21. *See also Id.* ¶ 15.

[9] *Id.* ¶¶ 3, 4, 29, 30, 40, 43, 50.

The Complaint alleges that plaintiff was "then arrested pursuant to the arrest warrant."[10]

The Complaint allegations do not state a claim, and this action should be dismissed.[11]

## ARGUMENT

## I. Standards For Dismissal And Qualified Immunity

This lawsuit is every bit the sort of strike suit that has made the United States Supreme Court stress the imperative of conducting a penetrating evaluation of complaints at the outset.

> [M]any [] provisions impos[e] requirements that permit courts to evaluate a complaint for sufficiency early in the process. Rule 8 itself requires a *showing of entitlement* to relief. Rule 9 requires that allegations of fraud, mistake, time, place, and special damages be specific. Rule 11 requires that the pleading be signed and provides that the signature "certifies" (1) that the claims in the complaint are not asserted for collateral purposes; (2) that the claims asserted are "warranted"; and (3) that the factual contentions "have evidentiary support." And Rule 12(b)(6) authorizes a court to dismiss any complaint that does not state a claim "upon which relief can be granted." **The aggregation of these specific requirements reveals the countervailing policy that plaintiffs may proceed into the litigation process only when their complaints are justified by both law and fact.**
>
> **In recent years, with the recognized problems created by "strike suits," and the high costs of frivolous litigation, the Supreme Court has brought to the forefront the Federal Rules' requirements that permit courts to evaluate complaints early in the process.**

*Francis v. Giacomelli*, 588 F.3d 186, 192-93 (4th Cir. 2009) (affirming dismissal of action for

---

[10] *Id.* ¶ 51.

[11] What the Complaint alleges about how the dog allegedly acted toward the prior officers who arrived is irrelevant. The Complaint allegations show that the dog did not act "calm and friendly" when Deputy Roane arrived. Nor does the Complaint allege that Deputy Roane had any other knowledge regarding the dog, prior to exiting his vehicle and being immediately faced with a barking 150-pound German Shepard coming at him.

Of course, what is alleged in the Complaint, by an attorney, is also wildly different from what Tina Ray herself says about what actually happened, as set out in the Answer with Exhibits.

failure to state a claim) (italicization in original, other emphasis added, internal citation omitted).

> [D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief,'" as required[.]

*Francis v. Giacomelli*, 588 F.3d at 193, *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief"'." *Iqbal*, 556 U.S. at 679, *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Conducting a penetrating evaluation at the outset is particularly important when, as here, qualified immunity is implicated.[12] Qualified immunity is a question of law to be determined by the court at the "earliest possible stage in litigation," including on a Rule 12(b)(6) motion to dismiss, because it is "an entitlement not to stand trial or face the burdens of litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001) ("[w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings . . . . The privilege is '*an immunity from suit* rather than a mere defense to liability'") (internal citation omitted, emphasis in original).[13]

---

[12]The Complaint names Deputy Roane as a defendant solely in his individual capacity. *See* Complaint caption.

[13]As the Supreme Court emphasized in *Iqbal*, "the question presented by a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process," and "'[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management'[.]" 556 U.S. at 684-85 (the "basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery'").

"Qualified immunity shields federal and state officials from money damages *unless* a plaintiff pleads facts showing (1) that the official violated a federal statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011) (reversing denial of qualified immunity on motion to dismiss, emphasis added).[14] Qualified immunity applies *unless* "existing precedent [has] placed the statutory or constitutional question beyond debate." *Id.* at 741, 742.

## II. <u>The Complaint Fails To State A Federal Claim</u>

The Complaint fails to state a federal claim, for either violation of the Fourth or Fourteenth Amendments (asserting seizure of plaintiff's "personal property," and violation of "substantive due process").

### A. Plaintiff's "Substantive Due Process" Claim Fails

Plaintiff asserts that she "had a clearly established property interest in her dog pursuant to Va. Code 3.2-6585," and that Deputy Roane "violated her substantive due process rights" in that regard.[15] The Complaint fails to state a claim for violation of substantive due process.

"The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v.*

---

[14]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. at 236. The Supreme Court has stressed that courts have the discretion to grant qualified immunity on the second prong of the analysis, without the judiciary and the parties having to expend their resources on the sometimes "difficult questions" of whether a constitutional right has been violated. *Pearson v. Callahan*, *Id.* at 227, 236-41; *Reichle v. Howards*, 556 U.S. 658, 664 (2012) ("[t]his approach comports with our usual reluctance to decide constitutional questions unnecessarily").

[15]Complaint ¶¶ 60-61.

*Oliver*, 510 U.S. 266, 272 (1994) (affirming Rule 12(b)(6) dismissal of due process claim).

The "property interest in her dog" with respect to which plaintiff asserts substantive due process protection is far afield of those things for which such protection has been recognized.

Furthermore, "[i]n case after case, the Supreme Court has . . . spurned any approach to the Fourteenth Amendment that would make it 'a font of tort law to be superimposed upon whatever systems may already be administered by the States.'" *Waybright v. Frederick County, Maryland*, 528 F.3d 199, 204-5 (4th Cir. 2008) ("the Supreme Court has established a strong presumption that § 1983 due process claims which overlap state tort law should be rejected")*, cert. denied*, 555 U.S. 1069 (2008).

Plaintiff's substantive due process claim should be dismissed.

### B. Plaintiff's Fourth Amendment "Seizure" Claim Fails, Including On The Basis Of Qualified Immunity

Plaintiff asserts that she had "a possessory interest in her dog pursuant to Va. Code 3.2-6585" and that Deputy Roane "unreasonabl[y] seiz[ed] her personal property" in that regard, in violation of the Fourth Amendment.[16] The Complaint fails to state a Fourth Amendment, and plaintiff's federal claims should also be dismissed on the alternative basis of qualified immunity.

#### 1. A Seizure That Is Not Unreasonable, As This Was Not, Does Not Violate The Fourth Amendment

For a Fourth Amendment seizure claim, a plaintiff must satisfy the required elements of such a claim. The plaintiff must show (1) unreasonable (2) seizure (3) by a government actor. *Monroe v. City of Charlottesville*, 579 F.3d 380, 386 (4th Cir. 2009) (affirming dismissal on the pleadings), *cert. denied*, 559 U.S. 992 (2010).

---

[16]*Id.* ¶ 56.

The plaintiff has the burden to show that an officer's conduct was not objectively reasonable, or there is no Fourth Amendment claim. Whether a seizure implicating the Fourth Amendment has occurred – *i.e.*, whether the seizure was "unreasonable" – "is an "objective determination." *Monroe*, 579 F.3d at 386.

> The "reasonableness" . . . must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . .
>
> The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts . . . the "reasonableness" inquiry . . . is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them without regard to their underlying intent or motivation.

*Graham v. Connor*, 490 U.S. 386, 396-97 (1989) (the reasonableness is analyzed "at the moment").

"Determining whether a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of '"the nature and quality of the intrusion on the individual's Fourth Amendment interests"' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. The test of reasonableness "requires careful attention to the facts and circumstances of each particular case," and whether the "totality of the circumstances" justified the particular seizure. *Id.*

Officer safety is a governmental interest of paramount importance. *Unus v. Kane*, 565 F.3d 103, 117 (4th Cir. 2009) ("the safety of the officer when conducting his duties is of paramount importance," analyzing reasonableness of the officer's conduct within the meaning of

the Fourth Amendment), *cert. denied*, 558 U.S. 1147 (2010). *See also Sigman v. Town of Chapel Hill*, 161 F.3d 782, 787 (4th Cir. 1998) (it is the officer's perception that matters, and when an officer "reasonably perceived a threat to his safety . . . his response [] was objectively justified and reasonable").

"This evaluation is guided by the pragmatic considerations of the moment and not by those that can be hypothesized from an armchair." *Id*. "The task of this court is to put itself into the shoes of the officers at the time the actions took place and to ask whether the actions taken by the officers were objectively unreasonable." *Altman v. City of High Point*, 330 F.3d 194, 205 (4th Cir. 2003) (officers were entitled to shoot the dogs in self defense).

Deputy Roane's action here, to protect himself from a rapidly advancing, barking, "alarmed," 150-pound German Shepard that was unexpectedly *not* tied to a tree and had reached within a step, in the instant he had to react, was not objectively unreasonable, and does not constitute a Fourth Amendment seizure. *Altman*, 330 F.3d at 206-7 ("[b]ecause none of the incidents involved objectively unreasonable action by the officers . . . the officers committed no unreasonable seizure in violation of the Fourth Amendment").

"The touchstone for reasonableness in dog-shooting cases is typically officer safety," and "ensuring officer safety is a 'particularly significant governmental interest.'" *Schutt v. Lewis*, 2014 WL 3908187 *3 (M.D. Fla. 2014) ("an officer's response need not be the best possible reaction under the circumstances to be considered reasonable," and even though the dog's owner "was able to get ahold of [the dog's] hind legs before [the dog] reached" the officer, "the Court cannot say that decision [to shoot the dog] was unreasonable under the circumstances," and thus there was no Fourth Amendment violation). *Accord McCarthy v. Kootenai County*, 2009 WL

3823106 **1, 6 (D. Idaho 2009) (officer walking toward residence to serve process began walking backwards when he noticed a large German Shepard on the front lawn, "but the dog alerted and started charging toward the officer" and the officer "fired one shot at the dog striking its head"; "the governmental interest of officer safety outweighs the Plaintiff's possessory interest in their dog" and consequently there was no Fourth Amendment violation); *Dziekan v. Gaynor*, 376 F. Supp. 2d 267, 271, 272 (D. Conn. 2005) ("courts have generally held that no unreasonable seizure may be found where an officer has killed a dog that posed an imminent threat"; "defendant could have reasonably assumed that the dog posed an imminent threat to his safety and, therefore, his conduct did not constitute an unreasonable seizure"; "the law does not require the officer to wait until the approaching animal is within biting distance or is leaping at him before taking protective action").

A law enforcement officer who "acted objectively reasonably, and in [his] own self defense" violates neither the United States Constitution nor Virginia law, even if it is a person, rather than a dog, that is shot. *See, e.g., Swann v. City of Richmond*, 498 F. Supp. 2d 847, 874 (E.D. Va. 2007), *aff'd*, 309 F. App'x 757 (4th Cir. 2009); *Tennessee v.* Garner, 471 U.S. 1, 11 (1985) (when the officer "believe[s] that the suspect poses a threat of serious physical harm, either to the officer or to others," the use of deadly force against the subject is not unreasonable).

Deputy Roane's act of self-defense was not an unreasonable seizure, and did not violate the Fourth Amendment.

### 2. Qualified Immunity Also Protects The Officer With Respect To The Conduct At Issue, In These Circumstances

The officer safety measure taken by Deputy Roane did not violate the Fourth

Amendment. In addition, qualified immunity protects the officer from liability in the particular circumstances here, and this action should be dismissed with prejudice for that alternative reason. *Rutledge v. Chatham*, 2010 WL 4791840 *5 (W.D. Va. 2010), *aff'd*, 414 F. App'x 568 (4th Cir. 2011) ("[a]lthough no Fourth Amendment violation appears to have occurred here, even if a violation did in fact happen, [the officer's] actions hardly constitute a violation of clearly established rights," dismissing on the alternate basis of qualified immunity as well).

As the Supreme Court has stressed, "The 'dispositive inquiry,' we have said, 'is whether it would [have been] clear to a reasonable officer' in the [defendants'] position 'that [their] conduct was unlawful in the situation [they] confronted'." *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (reversing denial of qualified immunity on motion to dismiss, alterations in original). *Accord Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established'," emphasis in original).[17]

A law enforcement officer is protected by qualified immunity *unless* he has "transgress[ed] bright lines" in the particular conduct alleged, defining the right alleged to have

---

[17] [W]e note that in determining whether the law is clearly established, the vintage of the asserted right is of less guidance than the specificity of the right. The right to due process, for example, might be considered clearly established because of the Constitution's Due Process Clause; however, "if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow*." Rather, the "contours of the right" must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional.

*Swanson v. Powers*, 937 F.2d 965, 969 (4th Cir. 1991) (reversing district court's denial of motion to dismiss, internal citation omitted, referring to *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)), *cert. denied*, 502 U.S. 1031 (1992).

been violated at "'a high level of particularity.'" *Trump Tight, LLC v. Bell*, 188 F. Supp. 3d 565, 570-71, 575-76 (E.D. Va. 2016) (granting motion to dismiss on the basis of qualified immunity, including Fourth Amendment claim; "qualified immunity 'gives ample room for mistaken judgments'" ), *aff'd*, 688 F. App'x 201 (4th Cir. 2017).

As the Supreme Court has stressed, when, as here, the "precedents do not place the conclusion that he acted unreasonably in these circumstances 'beyond debate'," qualified immunity applies. *Mullenix v. Luna*, 136 S. Ct. at 311.[18] In the particular circumstances here, the 150-pound German Shepard was, as was subsequently learned, on a long cord attached to a zipline running between two trees, allowing the dog to deceptively at first appear to be tethered to a tree limited in its range to a radius around one tree, only to have it suddenly apparently have free range as if broken free as it charged at the officer to within a step of the retreating officer before he shot to protect himself at that moment. Even if, with the luxury of armchair reflection, omniscience, hindsight, and the time to plan, those not on the front lines of law enforcement could conjure up alternative hypotheticals for dealing with an aggressive dog threatening an officer carrying out his law enforcement duties, it nevertheless cannot be said that no reasonable officer could have made the same choice as this officer in reacting to protect himself in that moment. Thus, Deputy Roane is entitled to qualified immunity. *Elliott v. Leavitt*, 99 F.3d 640,

[18]"[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

*White v. Pauly*, 137 S. Ct. 548, 550 (2017) ("Because this case concerns the defense of qualified immunity . . . the Court considers only the facts that were knowable to the defendant officers").

642 (4th Cir. 1996) (the "court's focus should be on the circumstances at the moment force was used and on the fact that officers on the beat are not often afforded the luxury of armchair reflection," reversing on interlocutory appeal the denial of qualified immunity and remanding with instructions to dismiss); *Stephenson v. McClelland*, 632 F. App'x 177, 185 (5th Cir. 2015) (affirming qualified immunity for officer shooting dog; "[w]hile [the family member] knew his family pet to be friendly and nonaggressive, Officer Duncan did not. Officer Duncan was startled by a large dog that was showing its teeth (whether baring them aggressively or 'smiling'). Officer Duncan was forced to make a split-second judgment in a tense situation and he acted to protect himself"); *Dziekan*, 376 F. Supp. 2d at 272, 273 (officer entitled to qualified immunity for shooting dog; "reasonably competent officers could disagree as to the appropriate course of conduct when faced with the potential harm" of a "55- to 60-pound dog running in circles within approximately 15 feet of an officer," and the "[d]efendant had heard from plaintiff that the dog would not bite, but he had no way to ascertain the truth of that representation within the time period at issue"); *Warboys*, 303 F. Supp. 2d at 119 n.14 ("even if [the officer's] shooting of [the dog] constituted an unreasonable seizure under the fourth amendment, the court concludes that 'it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act' . . . and that he was therefore entitled to qualified immunity"); *McCarthy*, 2009 WL 3823106 *6 ("a reasonable officer concerned about his personal safety would not have understood that shooting the dog violated a clearly established constitutional right," and therefore "even if the actions of [the officer] rose to the level of a constitutional violation, the Court finds that [the officer] would be entitled to qualified immunity for his actions").

Even if Monday morning quarterbacks were to contend that the officer could have or

should have done something different in that moment, qualified immunity applies. Indeed, it is precisely because officers carrying out their law enforcement duties on the front lines must react quickly and make decisions in the face of uncertain situations, with serious consequences for their safety if they make the wrong choice, that the law provides for qualified immunity protection. Also, "qualified immunity is appropriate if reasonable officers could disagree on the relevant issue[.]" *Swanson v. Powers*, 937 F.2d at 968. *See also Korb v. Lehman*, 919 F.2d 243, 246-47 (4th Cir. 1990) ("[i]f there exists a 'legitimate question' as to whether particular conduct violates a particular right then the right is not clearly established and qualified immunity applies"; "the question of immunity is independent of the merits of a plaintiff's claim, and may be decided in the early stages of litigation, even prior to discovery," affirming Rule 12(b)(6) dismissal on the basis of qualified immunity) (internal citation omitted)), *cert. denied*, 502 U.S. 808 (1991). Qualified immunity protects "mistakes in judgment" and "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact'." *Pearson v. Callahan*, 555 U.S. at 231. "Ultimately, whatever can be said of the wisdom of [the officer's] choice, this Court's precedents do not place the conclusion that he acted unreasonably in these circumstances 'beyond debate'," and qualified immunity therefore applies. *Mullenix v. Luna*, 136 S. Ct. at 311 (emphasis added), *quoting Al-Kidd*, 563 U.S. at 741.

Deputy Roane did not violate the Fourth Amendment, and furthermore qualified immunity also protects the conduct at issue in the circumstances here, and plaintiff's federal

claims should be dismissed with prejudice.[19]

## III. Plaintiff's State Law Claims Are Without Merit As Well

The Complaint also fails to state a claim under state law, for either conversion or intentional infliction of emotional distress.[20]

### A. Plaintiff's Intentional Infliction Of Emotional Distress Claim Fails

Plaintiff asserts an intentional infliction of emotional distress claim, asserting that the shooting of her dog caused her "severe emotional distress as a result."[21] Virginia law precludes such a claim, however. *Kondaurov v. Kerdasha*, 271 Va. 646, 656-57, 629 S.E.2d 181, 186-87 (2006) (in Virginia, dogs are considered personal property, and the plaintiff could not claim emotional distress to herself for injury to her dog).[22]

### B. Plaintiff's "Conversion" Claim Fails

Plaintiff asserts a claim for "intentional tort of conversion," contending that she was

---

[19]Qualified immunity also applies with respect to plaintiff's substantive due process claim, and provides an alternative basis for dismissal of that claim as well.

[20]*See also* 28 U.S.C. § 1367(c) ("[t]he district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction").

[21]Complaint ¶ 67.

[22]Nor do plaintiff's allegations, in any event, state such a claim. *See Ruth v. Fletcher*, 237 Va. 366, 373 (1989) ("[b]ecause of the risks inherent in torts where injury to the mind or emotions is claimed, we declared such torts 'not favored' in the law"); *Russo v. White*, 241 Va. 23, 27-28 (1991) (affirming trial court's dismissal of action on demurrer, discussing the numerous stringent requirements for a claim for emotional distress resulting from a non-tactile tort, and that it is not even sufficient for "a defendant to have 'acted with an intent which is tortious or even criminal'"); *Ely v. Whitlock*, 238 Va. 670, 385 S.E.2d 893 (1989).

"depriv[ed] [] of her personal property" without "lawful justification."[23] There is no basis under Virginia law for a tort claim of conversion against a law enforcement officer who shot a dog in the course of carrying out his law enforcement duties, as here. Virginia law has long recognized that it would be a false analogy to treat a law enforcement officer's conduct in the course of his law enforcement duties as the equivalent of that of other individuals. Deputy Roane's conduct was not wrongful or without lawful justification, and plaintiff's conversion claim fails.

Virginia law provides that even if it were assumed that the officer made a mistake with respect to the dog, the conduct of a law enforcement officer "resulting from a mistake in law [or] a mistake of fact" is not actionable when, as here, the officer acted in "good faith and 'reasonable belief' in the validity of" the conduct. *DeChene v. Smallwood*, 226 Va. 475, 479 (1984) (reversing trial court as to claims including intentional torts and ordering final judgment in favor of defendant), *cert. denied*, 469 U.S. 857 (1984).

Furthermore, an officer in these circumstances is protected from liability by sovereign immunity and good faith immunity, even if one were to assume the officer made a mistake.

The doctrine of sovereign immunity has been vigilantly maintained in Virginia because it:

> serves a multitude of purposes including but not limited to protecting the public purse, providing for smooth operation of government, eliminating public inconvenience and danger that might spring from officials being fearful to act, assuring that citizens will be willing to take public jobs, and preventing citizens from improperly influencing the conduct of governmental affairs through the threat or use of vexatious litigation.

*Messina v. Burden*, 228 Va. 301, 308 (1984).[24] *See also DeChene v. Smallwood*, 226 Va. at 478-

---

[23]Complaint ¶ 64.

[24]"In Virginia . . . the question of whether a particular act is entitled to the protection of sovereign immunity depends upon whether the act under consideration is classified as

79, 481 (officer's good faith, reasonable belief that his conduct was lawful, even if he misperceives the facts or is mistaken about the law, protects him from liability including for intentional torts), *cert. denied*, 469 U.S. 857 (1984).

That plaintiff has labeled her state law claims as something other than negligence does not magically elevate them to beyond reach of sovereign immunity protection. As the Virginia Supreme Court stated in *Lentz v. Morris*, "[t]he facts do not support a charge of either gross negligence or intentional misconduct." 236 Va. 78, 82 (1988). *See also Colby v. Boyden*, 241 Va. 125, 129-30, 133 (1991) ("[s]uch situations involve necessarily discretionary, split-second decisions balancing grave personal risks, public safety concerns, and the need to achieve the governmental objective"); *Swann v. City of Richmond*, 498 F. Supp. 2d at 874 ("each of the defendants acted objectively reasonably, and in their own self defense, when they shot at the Nissan. Thus, as a matter of law, [plaintiff] cannot establish that they acted with gross negligence," even though the person in the vehicle was unarmed and hit by five shots).[25]

It is respectfully submitted that plaintiff's state law claims fail as well, and this action should be dismissed with prejudice.

## **CONCLUSION**

Based upon the foregoing, Augusta County Deputy Sheriff Michael Roane submits that

---

discretionary or ministerial in nature." *Colby v. Boyden*, 241 Va. 125, 128-29 (1991). For sovereign immunity, the "four factors are: (1) the nature of the function the employee performs; (2) the extent of the government's interest and involvement in the function; (3) the degree of control and direction exercised over the employee by the government; and (4) whether the act in question involved the exercise of discretion and judgment." *Id.*, citing *Messina v. Burden*.

[25]Sovereign immunity and good faith immunity similarly provide an alternative basis for dismissal of plaintiff's emotional distress claim as well.

this action should be dismissed with prejudice, along with such other and further relief to him as is just, including an award of the attorney's fees incurred in the defense of this action.

Augusta County Deputy Sheriff
Michael Roane

By s/ Carlene Booth Johnson
Counsel

Carlene Booth Johnson VSB No. 36473
Perry Law Firm
A Professional Corporation
262 Chellowe Road
Dillwyn, Virginia 23936
tel: (434) 983-5005
fax: (434) 983-5021
email: perrylawfirm@hughes.net

Certificate

I certify that on November 1, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of the filing to the following:

Mario Bernard Williams, Esq.
Nexus Caridades Attorneys, Inc.
44 Broad Street, NW, Suite 200
Atlanta, GA 30303

By s/ Carlene Booth Johnson
Counsel

Carlene Booth Johnson VSB No. 36473
Perry Law Firm
A Professional Corporation
262 Chellowe Road
Dillwyn, Virginia 23936
tel: (434) 983-5005
fax: (434) 983-5021
email: perrylawfirm@hughes.net