IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| **TINA RAY,** | ) | |
| | ) | |
| Plaintiff, | ) | CAF No.: 5:17-cv-00093-EKD |
| | ) | |
| v. | ) | |
| | ) | |
| **MICHAEL ROANE,** | ) | |
| in his individual capacity, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

**RESPONSE TO DEFENDANT MICHAEL ROANE'S MOTION TO DISMISS**

Plaintiff, Tina Ray, files this Response to Defendant Michael Roane's Motion to Dismiss Ms. Ray's claims under the Fourth Amendment and Substantive Due Process as well as Ms. Ray's claims for Conversion and Intentional Infliction of Emotional Distress. This Court should deny the Defendant's Motion for the following reasons:

1. Plaintiff states a claim under the Fourth Amendment because the considered-true facts and inferences at this litigation stage demonstrate that Roane did not face a "sufficiently substantial and immediate" threat to his life at the time he shot Ms. Ray's dog Jax; instead, Roane knew both that he was safe and that Ms. Ray was controlling her dog, yet Roane placed himself over the dog and shot downward into the dog's skull at point blank range. (ECF 1, ¶ 39); Altman v. City of High Point, N.C., 330 F.3d 194, 205 (4th. Cir. 2003); Cf. Mullenix v. Luna, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (reasoning that deadly force is not legally justifiable "absent a sufficiently substantial and immediate threat" to the life of a law enforcement officer or others);

2. Plaintiff's claim is not barred by qualified immunity because no reasonable officer--after determining he was safe from Ms. Ray's dog, with Ms. Ray exercising control over her dog--could conclude that standing over her dog and casually executing him did not violate clearly settled law. Id.;

3. Plaintiff states a claim for Intentional Infliction of Emotional Distress because case law in this area is not clear and thus does not preclude Ms. Ray's claim for Intentional Infliction of Emotional Distress. See Kondaurov v. Kerdasha, 271 Va. 646 (2006);

4. Plaintiff states a valid claim for conversion because Roane acted intentionally, without justification or excuse, when he casually stood over Ms. Ray's dog and executed him, and thus Roane is not immune from this intentional tort claim. See Tomlin v. McKenzie, 251 Va. 478 (1996); Breedlove v. Hardy, 132. Va. 11 (1922).

## **INTRODUCTION**

Foremost, Roane is grossly mischaracterizing Ms. Ray's Complaint. For example, Roane states:

> "The *Complaint alleges* Deputy Roane fired one shot at the dog *due to the imminent threat to his safety* in that moment because the dog was going to bite him, as the Complaint alleges he said at that time."

(ECF 4, at 2.) (emphasis added.) Empathically, Ms. Ray's Complaint made no such statement (express, or implied). To the complete opposite, Ms. Ray's Complaint alleges that Roane, after appreciating that Jax reached the end of his lead while Ms. Ray was exercising control over Jax, calmly stepped towards Jax, stood over the dog, placed his gun to his head, and shot downward into Jax's skull, at point blank range, while Ms. Ray held Jax's lead. (ECF 1, ¶¶ 37-40.) Roane's grossly misleading statement should give this Court serious pause, with respect to

trusting Roane's brief. On top of that, there exists other concerns regarding Roane's Answer.

Roane is asserting affirmative defenses that are not affirmative defenses at all. For example, Roane asserts Rule 11 as an affirmative defense; Rule 11 is not an affirmative defense: "[a]n affirmative defense asserting a violation of Rule 11 is subject to a motion to strike since Rule 11 requires the presentation of a motion and not the assertion of an affirmative defense." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., No. 1:00CV00113, 2001 WL 1180469, at 3 (W.D. Va. 2001); (see also 35A C.J.S Federal Civil Procedure § 482.) Moreover, Roane asserts assumption of risk as an affirmative defense, but this case is about intentional conduct, the nature of which is not subject to such a defense. See Arndt v. Russillo, 231 VA 328, 332 (1986); (see generally, ECF 1.)

In that same vein, Roane's assertion, as an affirmative defense, that Ms. Ray failed to mitigate damages is simply not "contextually comprehensible" based on the facts alleged in Ms. Ray's Complaint. See Odyssey Imaging, LLC v. Cardiology Assocs. Of Johnston, LLC, 752 F.Supp2d 721, 727 (W.D. Va. 2010).

Suffice to say--save Ms. Ray's respect for this Court's time--she would file a motion to strike these baseless and frivolous affirmative defenses.[1]

**ON TOP OF ROANE'S MANY BASELESS AFFIRMATIVE DEFENSES, HIS ATTEMPT TO IMPUGN COUNSEL'S CREDIBILITY IS FRIVOLOUS**

Contrary to Roane's assertion, Plaintiff easily meets the standard of conducting a reasonable investigation prior to filing suit. (ECF 5, ¶ 164, 165.) For example, Ms. Ray's counsel actually *exhumed* the subject dog to locate the entry wound caused by Roane shooting downward into Jax's skull. (See Ex. 1.) As far as Roane's statement that he examined the lead and determined that the dog could have advanced 15 more feet (Id., ¶130), Ray's counsel relied on photographs

---

[1] Notably, although many courts have reasoned that the Twombly-Iqubal pleading standards do not apply to defendants' Answers, Rule 11 does apply to defendants' Answers, including affirmative defenses:

> "This is not to say, however, that litigants and their attorneys should feel free to recite in their answers a *litany of irrelevant and unsupported affirmative defenses*. *Such is sanctionable conduct under Rule 11*, which requires the person signing or filing any paper presented to the Court to implicitly certify "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... the ... defenses ... are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed.R.Civ.P. 11(b)(2). Thus, even though the Court has concluded that *Twombly–Iqbal* is inapplicable to affirmative defenses, attorneys, and *pro se* litigants where appropriate, are still held to a basic standard of accountability for the contents of their court papers."
>
> LBCMT 2007-C3 Urbana Pike, LLC v. Sheppard, 302 F.R.D. 385, 387–88 (D. Md. 2014) (emphasis added).

showing the lead *stretched out completely*, along with relying on statements by witnesses—all of which easily meets the standard of a reasonable inquiry. (See Ex. 2, for photos of Jax's lead).

This Court should admonish Roane's counsel for (1) making baseless affirmative defenses, while ironically attacking the legal legitimacy of Plaintiff's asserted facts and claims, and for (2) making baseless assertions of Rule 11 violations, because if Roane's counsel truly thought Rule 11 applied to the factual allegations in Ray's complaint, she should send Ms. Ray's counsel a safe harbor letter—mindful that Roane's counsel will subject herself to Rule 11 sanctions while doing so. See Fed R. Civ. P. 11.

Furthermore, the audio recording Roane relies on (see ECF 5-2) demonstrates two points that actually favor Ms. Ray: (1) when she stated in the audio recording that Jax would not have bitten Roane with her right there with Jax, Ms. Ray clearly demonstrates that she was exercising control over her dog at the time Roane shot Jax (see ECF 5-2, at 0 minutes and 26 seconds), and (2) Roane admits he was not bitten. (ECF 5-2, at 8 minutes 51 seconds). Those facts, put together with the considered-true facts of Ms. Ray's complaint—clearly demonstrate a plausible claim that Roane did not face a "sufficiently substantial and immediate threat" to his life at the time he executed Jax by calmly stepping

toward Jax and then shooting downward into Jax's skull, at point blank range. See Luna, supra.

## SOME OF THE FACTS OF THIS CASE AS APPLIED TO THE CONTROLLING LEGAL STANDARD

Reviewing a motion to dismiss for failure to state a claim begins with Rule 8 of the Federal Rules of Civil Procedure, which mandates that a Complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see also Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Also, and notably: motions to dismiss "are viewed with disfavor [and] rarely granted…." Volpone v. Caldera, 190 F.R.D. 177, 180 (E.D. Va. 1999).

That established, the question that confronts this Court, at this litigation stage, is "not whether [Plaintiff] will ultimately prevail" [on his claims], but whether [his] complaint was sufficient to cross the federal court's threshold." Skinner v. Switzer, 562 U.S. 521, 529–30 (2011). Respecting that threshold, generally speaking, a court must accept factual "allegations of [Plaintiff's] Complaint and supporting affidavits as true"—and the reasonable inferences derived from those accepted-true facts are also deemed true. Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 172 (1967); see also Cooper v. Pate, 378 U.S. 546 (1964); see also E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011) (stating that "[w]hen ruling on a Rule 12(b)(6) motion to dismiss, a judge must accept as true all of the factual allegations contained in the

complaint…. And all reasonable inferences must be drawn in favor of the complainant.”)

For example, in this case, this Court should consider true the following facts: that Roane stopped backing up from Jax because he appreciated that (1) Jax could not get any closer to him because Jax had reached the end of his lead, and (2) Ms. Ray was holding onto the fully-extended zip-lead, exercising control over Jax; and (3) Roane took a step toward Jax so that he stood over Jax, then, (4) Roane put his gun to the Jax's head at point blank range, shooting downward into Jax's skull. (ECF 1, ¶¶ 35-39). The reasonable inference from these facts, at this litigation stage, is that Roane did not face a "sufficiently substantial and immediate threat" at the time he shot Ms. Ray's dog in the head. Luna, supra. Any statements or evidence that conflict with those facts and inferences should, at this litigation stage, be resolved in Ms. Ray's favor. Gardner, 387 U.S. 167, 172 (1967); Luna, supra. Furthermore, there are witnesses to this case who saw Roane step towards Jax and shoot him at point blank range, with an expressionless face and calm poise, all while noting Jax could not reach Roane. (ECF 1, ¶45).

That said, although this Court must discard "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements," detailed factual allegations are not required. Iqbal, 556 U.S. at Id.; see also Kolon Indus. Inc., 637 F.3d at 448 (stating, "the complaint need only give the defendant fair notice of

what the claim is and the grounds upon which it rests.") Said differently by the U.S. Supreme Court: "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible "short and plain" statement of the plaintiff's claim, not an exposition of his legal argument." Skinner v. Switzer, 562 U.S. 521, 530 (2011) (emphasis added).

Here, paragraphs 39 and 57, inter alia, are short and plain, ranging no more than two sentences, and containing no conclusory language. (ECF 1, ¶¶ 39, 57). These paragraphs clearly state that Roane calmly shot Ms. Ray's dog in the head after observing the dog was at the end of his lead and did not pose a sufficiently substantial and immediate danger to Roane, and after observing Ms. Ray looking on, obviously desirous of retaining custody of her dog. Id.

Additionally, a "plausible" claim is one that creates "[a] reasonable expectation that discovery will reveal evidence of plaintiff's claims." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556; 127 S. Ct. 1955, 1965 (2007). Significantly, "determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Iqbal, 556 U.S. at 663-64; Cf. United States v. Marino, 562 F.2d 941, 945 (5th Cir. 1977) (stating, "[c]onsidering that Judges have, or at least are assumed to have, common sense and are to use it in their varied determinations, it would be ironic to hold that an appeal to this quality of intellect, wisdom and experience would

be wrong”). Therefore, a court should not dismiss an action for failure to state a claim unless, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, the plaintiff’s complaint fails to nudge the claims “across the line from conceivable to plausible”. Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc., 591 F.3 250, 256 (4th Cir. 2009) (citing Iqbal, 556 U.S. 662 (2009)). The “plausibility standard requires only that the complaint's factual allegations ‘be enough to raise a right of relief above the speculative level.’” Houck v. Substitute Tr. Servs., Inc., 791 F.3d 473, 484 (4th Cir. 2015) (quoting Twombly, 550 U.S. at 555).

In sum, after applying common sense and experience to Plaintiff’s well pled facts, this Court must conclude that Plaintiff merely “nudged [his] claims across the line from conceivable to plausible,” in order to dismiss Defendants’ Motion. Twombly, 550 U.S. at 556, 570 (emphasis added). The allegations in Ms. Ray’s Complaint, at this litigation stage, plausibly show that Roane did not fear for his life when he shot Jax, and therefore acted unreasonably.

## CONSIDERED TRUE FACTS AT THIS LITIGATION STAGE

Roane barreled into Jax’s play area and parked his car directly under Jax’s zip lead. (ECF 1, ¶26). Ms. Ray immediately began shouting Jax’s name and ran to his zip lead. Id. ¶ 28. At the same time, the other four deputies began shouting

at Roane to permit Ms. Ray to get her dog. Id. ¶27. At this time, Roane stepped out of his vehicle, slamming his door, and Jax began barking at Roane while approaching him. Id. ¶ 29. Roane began backing away from Jax, *who was not running Roane down*. Id. ¶ 30 (emphasis added). Prior to the fatal shot, Jax reached the end of his lead and could not get any closer to Roane. Id. ¶ 32. Roane saw that Jax could not get any closer and that Ms. Ray was exercising control over Jax. Id. ¶ 34. Despite the end of any danger to Roane, and after Roane appreciated that Jax had reached the end of his lead, Roane stepped back towards Jax, stood over him, placed his gun on Jax's head, and shot Jax at point blank range. Id. ¶39.

## ARGUMENT AND CITATION OF AUTHORITY

### I. Complaint States a Claim under Fourth Amendment

Once considered true, the fact that Roane calmly positioned his body over the dog and shot down into the dog's skull with his firearm--after appreciating the dog reaching the end of its leash and the dog's owner exercising control over the dog--demonstrates both that (1) Ms. Ray has stated a Fourth amendment claim and (2) Roane is not immune from discovery at this stage.

#### A. Legal standard

The Fourth Amendment, made applicable through the Fourteenth Amendment, states "the right of the people to be secure in their persons, houses,

papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. AMEND. IV. The Fourth Amendment proscribes unreasonable seizures such as the one that took place in this case because "the bond between a dog owner and his pet can be strong and enduring" and many "consider dogs to be their most prized personal possessions." Altman, supra at 205 (holding the Fourth Amendment interests of dog owners involved in dog shooting cases significant). To evidence a plausible Fourth Amendment claim for an alleged unreasonable seizure of a dog, plaintiff must show at this litigation stage that

1. Roane plausibly seized Ms. Ray's dog when he shot and killed him;
2. Roane plausibly acted objectively unreasonably when he shot and killed Ms. Ray's dog without sufficiently substantial and immediate threat to his life or others; and
3. Defendant was acting under color of state law at the time he shot Ms. Ray's dog.

See Monroe v. City of Charlottesville, Va., 579 F.3d 380, 386 (4th Cir. 2009); Altman, supra; Luna, supra; Twombly, supra. Relevantly, courts have repeatedly held that using deadly force against a dog is unreasonable, even if the dog surprises an officer, when, as here, the dog no longer poses a threat to the officer and the owner is nearby and desirous of retaining custody. See Criscuolo v.

Grant County, 540 Fed. Appx 540, 564 (9th Cir. 2013). No case has granted immunity to an officer when, after determining the dog constituted no threat, said officer shoots the dog regardless. See generally Brown v. Muhlenberg Twp., 269 F.3d 205 (3rd Cir. 2001) (holding officer may not destroy a pet, in the presence of its owner, when it poses no threat); Vilo v. City of Milwaukee, 547 F.3d 707 (7th Cir. 2008) (reasoning that it is clearly established that it is unreasonable for an officer to kill a person's pet that poses no threat).

**B. The standard as applied to the facts demonstrate that Roane plausibly violated Ms. Ray's Fourth Amendment right**

As pled, the Complaint plausibly shows that prior to killing Jax, Roane appreciated the fact that Jax had reached the end of its lead and could go no further towards Roane, while Ms. Ray was exercising control over Jax. (ECF 1, ¶ 34-37). Then, as considered-true, after determining Jax was no threat to his safety, Roane stood over Jax, calmly and without expression, placed his gun to Jax's head, then shot downward into Jax's skull. Id. at ¶39. These considered-true facts plausibly show that Jax did not pose a sufficiently substantial and immediate threat to Roane at the time that Roane killed Jax by fatal gunfire. See Criscuolo, supra at 564. As such, the Plaintiff has stated a plausible claim that Roane violated Ms. Ray's Fourth Amendment right with respect to using deadly force against Jax.

## II. Qualified Immunity Does Not Apply

Since 2003, Roane has had fair notice/warning that unjustifiably killing a pet dog constitutes an unconstitutional seizure under the Fourth Amendment and thus Roane is not protected by immunity at this litigation stage. Altman, supra.

### 1. Legal standard

Qualified immunity is a justified and powerful concept that shields public officials from both trial and suit. See Mitchell v. Forsyth, 472 U.S. 511 (1985). That shield has been forged by iron-clad public policy, which militates against public officials being placed in situations of second guessing themselves on a day-to-day basis, especially law enforcement officers, who are forced to make split-second decisions on a daily basis. *See* Graham v. Connor, 490 U.S. 386, 397 (1989).

Qualified immunity, however, is not a "license to lawless conduct." Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982). In that vein, the Supreme Court has recently re-iterated, in the context of using deadly force, a bedrock principle of our judicial system: "genuine disputes are generally resolved by juries in our adversarial system." Tolan v. Cotton, 134 S. Ct. 1861, 1868 (2014). That's why, even when acknowledging the strong justifications for qualified immunity, courts must never forget that "qualified-immunity cases illustrate the importance of drawing inferences in favor of the non- movant, even when, as here, a court

decides only the clearly-established prong of the standard." Id. For a constitutional right to be clearly established, "its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 739 (internal quotation marks omitted). Thus, *in this case*, the "salient question" is whether "the state of the law" at the time of the asserted constitutional violation gave Officer Roane "fair warning" that his alleged conduct was unconstitutional. Id. at 741.

Significantly, when determining the "state of the law' regarding Roane's conduct, this Court looks first to controlling precedent from the Fourth Circuit Court of Appeal, the Virginia Supreme Court, and/or the U.S. Supreme Court—but when no controlling precedent exists, this Court will look outside this Circuit to a "consensus of cases of persuasive authority" to determine whether the relevant law was clearly established:

> In conducting the clearly established analysis, we first examine "cases of controlling authority in [this] jurisdiction,"—that is, "decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose" …. We "ordinarily" need not look any further than decisions from these courts…. But when "there are no such decisions from courts of controlling authority, we may look to 'a consensus of cases of persuasive authority' from *other jurisdictions*, if such exists."
>
> [Booker v. S.C. Dep't of Corr., 855 F.3d 533, 538–39 (4th Cir. 2017)]

**1. The law was clearly established that Roane could not execute Jax with no sufficiently substantial and immediate threat posed to Roane's life or the life of others**

From at least 2003, the Fourth Circuit Court of Appeals placed Roane on fair notice/warning that Ms. Ray had a clearly established right to enjoy her dog Jax, free from Roane using unreasonable deadly force against Jax. Altman, supra. In Altman, the Court *referenced sister circuit decisions* to conclude that although in Altman the officers were immune from liability regarding the killing of *un*leashed and loose dogs, "[t]he private Fourth Amendment possessory interests are obviously stronger when, although the dog is unleashed, the owner is nearby and attempting to assert control over the dog." Id., at 207.

Here, unlike Altman, the Fourth Amendment possessory interest is even stronger because Jax was both on a leash and with its owner (Ms. Ray) who was asserting control over Jax at the time Roane shot Jax. And those facts, along with the considered-true facts of Ms. Ray's Complaint, placed Roane on fair notice/warning that when a dog is on a leash, with the owner exerting control over the dog, and the dog can no longer reach Roane—Roane cannot calmly approach said dog, place his body over said dog, then fire a bullet into said dog's skull at point blank range. (See ECF 1 ¶¶ 37-40.) But in addition, and relevant to Altman, supra citing sister-circuit cases that clearly proscribe Roane's conduct (see Booker, supra, stating "we may look to 'a consensus of cases of persuasive

authority' from *other jurisdictions*, if such exists"), the Altman Court cited Brown v. Muhlenberg Twp., 269 F.3d 205, 211 (3d Cir.2001).

In Brown, while analyzing the shooting of a *loose* dog that posed no threat to the officer, the Court stated that officials may not "consistent with the Fourth Amendment, destroy a pet *when it poses no danger* and the owner is looking on, obviously desirous of retaining custody." Brown, supra. With that in mind, and building on Altman and Brown, the Court in Criscuolo held that it "is clearly established that it is unreasonable to shoot an unleashed dog – even if it surprises an officer on public property – if it poses no imminent or obvious threat, its owner is in close proximity and desirous of retaining custody, and deadly force is avoidable"—mindful that, here, *and unlike Criscuolo*, Jax was actually on a leash that reached its end and had his owner exercising control over him at the time Roane shot a bullet into Jax's skull. Criscuolo v. Grant County, 540 Fed. Appx 540, 564 (9th Cir. 2013) (citing Brown v. Muhlenberg Twp., 269 F.3d 205, 210-1 (3rd Cir. 2001).

On top of Altman, Brown, and Criscuolo, and in consensus, more sister-circuit cases placed Roane of fair notice/warning that killing a pet while that pet poses no sufficiently substantial and immediate threat of harm to a law enforcement officer is unreasonable. See e.g. Fuller v. Vines, 36 F.3d 65, 68 (9th Cir. 1994), *overruled on other grounds by* Robinson v. Solano Cnty., 278 F.3d 1007

(9th Cir. 2002); Vilo v. City of Milwaukee, 547 F.3d 707 (7th Cir. 2008); Lesher v. Reed, 12 F.3d 148, 151 (8th Cir. 1994).

Simply put, at this litigation stage, the considered-true fact as applied to clearly established law within and without this Circuit, demonstrate that Roane is not entitled to immunity at this time. (**Compare** ECF 1, Statement of Facts, **with** Altman, supra, **with** Vilo, supra, **with** Lesher, supra, **with** Fuller, supra, **with** Criscuolo, supra.)

## III. Plaintiff's Complaint States a Claim for Intentional Infliction of Emotional Distress for Roane's Intentional Killing of Jax as Ms. Ray Watched Helplessly

Defendant Roane's reliance on Kondaurov is misplaced as this case does not preclude Plaintiff's claim for Intentional Infliction of Emotional Distress. Roane, in his Motion to Dismiss, cites Kondaurov case as stating that "plaintiff could not claim emotional distress to herself for injury to her dog." (ECF 3, p. 14). In fact, the holding of Kondaurov is significantly more limited. Kondaurov holds that Virginia Courts have never approved an award of damages for emotional distress from "*negligently inflicted injury*" to dogs. Kondaurov v. Kerdasha, 271 Va. 646 (2006) (emphasis added).

In Kondaurov, the Virginia Supreme Court found that it is "beyond debate that animals, particularly dogs and cats, when kept as pets and companions, occupy a position in human affections."Id. at 657. In fact, the Court stated that

"an emotional bond may exist with a pet resembling that between a parent and a child, and the loss of such an animal may give rise to grief approaching that attending the loss of a family member." Id. at 657. Finally, the Court noted in footnote 4 that jurisdictions have "expressly permitted recovery of damages for emotional distress in cases of animals injured or killed by willful, intentional, or outrageous torts." Id. at 657.

However, in this case, Ms. Ray alleges that Roane *intentionally* killed her dog, in her face, maliciously/wantonly, and thus intentionally inflicted emotional distress upon her. (ECF 1, ¶39). To the best of Plaintiff's knowledge, there has been no Virginia Supreme Court case ruling that recovery of damages for intentional infliction of emotional distress is barred—where that distress is caused by *intentional* injury to a dog. Notably, sister courts, have permitted recovery for intentional harm inflicted on animals in front of their owners.

Florida, for example, has expressly permitted recovery for mental anguish and suffering from intentional harm to dogs caused in the presence of their owners for more than 50 years. LaPorte v. Associated Independents, Inc., 163 So.2d 267 (1964). In the LaPorte case, an employee of a garbage pickup company threw a garbage can at the Plaintiff's dachshund (dog) tethered in her yard. Id. at 268. In overturning the denial of recovery for mental suffering this caused LaPorte, the Florida supreme court held that "that the affection of a master for

his dog is a very real thing and that the malicious destruction of a pet provides an element of damage for which the owner should recover". Id. at 269.

Additionally, Kentucky has also allowed recovery for the intentional killing of an owner's pet. See Burgess v. Taylor, 44 S.W.3d 806, 813 (Ct. App. KY 2001). In Burgess, the court, in awarding damages for the intentional infliction of emotional distress to pets, found that the elements of the tort of Intentional Infliction of Emotional Distress depend on the facts related to the offender's conduct, not the subject of that conduct such as pets. Likewise, in reviewing the elements of Intentional Infliction of Emotional Distress in Virginia, the Plaintiff notes that the relevant elements likewise focus on facts with respect to the offender's conduct, such as whether the wrongdoers conduct is intentional or reckless; or the conduct is outrageous or intolerable. See Russo v. White, 241 Va. 23-27 (1991).

In sum, Virginia law in this area of tort recovery is unsettled, with no controlling precedent approving or denying such recovery. Consequently, the Kondaurov case does not preclude Ms. Ray's claim for Intentional Infliction of Emotional Distress, and as such, Ms. Ray requests that she be allowed to seek discovery under this theory of recovery.

### III. Plaintiff's Conversion Claim is not Barred by Sovereign Immunity as Roane Acted Intentionally and Not in Good Faith

Under the considered-true facts of the Complaint, Roane's actions cannot be characterized as anything other than an intentional act and thus Roane is not protected by sovereign immunity from the intentional tort of conversion. See Tomlin v. McKenzie, 251 Va. 478 (1996) (reasoning that sovereign immunity applies only to negligent claims against state actors and does not protect against the intentional acts of wrongdoers.)

#### 1. Legal standard

Gross negligence and intentional torts of agents of the state are not protected by sovereign immunity. Id. (reasoning that acts which constitute a wanton and intentional deviation from the duties the agent has been assigned to undertake and not protected.) Sovereign immunity only covers actions which are negligent and where the defendant acts in good faith. Lentz v. Morris, 236 Va. 78, 82 (1988). It is well settled law in Virginia that deliberately and wrongfully shooting a dog constitutes an actionable conversion. Breedlove v. Hardy, 132. Va. 11 (1922).

#### 2. Facts as applied to the controlling law demonstrates that Roane acted intentionally and thus Roane is not immune from discovery in this case.

For the reasons explained in response to the qualified immunity discussion, the considered-true facts of Ms. Ray's Complaint plausibly show that

Roane's actions were wrongful and without legal justification and that Roane did not make a mistake, either of fact or law, when he executed Jax. Such wanton and intentional, wanton acts are not negligent and are thus are not protected by sovereign immunity. Tomlin, supra at 478 (1996). And just because Roane has recast the facts as a negligence does not magically transform them into a negligence claim covered by sovereign immunity under Lentz; instead, the facts, when considered true, continue to support Ms. Ray's conversion claim based on, inter alia, intentional conduct by Roane. Breedlove, 132 Va. 11 (1922) (holding the wrongful and deliberate shooting and killing of a dog constitutes conversion).

## CONCLUSION

Based on the aforementioned reasons, this Court should deny Defendant's Motion.[2]

Respectfully submitted on this 15th day of November, 2017,

s/Mario B. Williams
Mario B. Williams (VSB # 91955)

**NEXUS CARIDADES ATTORNEYS, INC.**
44 Broad St. NW, Suite 200
Atlanta, GA 30303
404-654-0288/703-935-2453 FAX
mwilliams@nexuscaridades.com
mario@goodgeorgialawyer.com

[2] Plaintiff will not pursue her substantive due process claim.

CERTIFICATE OF SERVICE

I certify that on November 1, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of the filing to the following:

Carlene Booth Johnson
Perry Law Firm
A Professional Corporation
262 Chellowe Road
Dillwyn, Virginia 23936
perrylawfirm@hughes.net

Respectfully submitted on this 15th day of November, 2017,

s/Mario B. Williams
Mario B. Williams (VSB # 91955)

**NEXUS CARIDADES ATTORNEYS, INC.**
44 Broad St. NW, Suite 200
Atlanta, GA 30303
404-654-0288/703-935-2453 FAX
mwilliams@nexuscaridades.com
mario@goodgeorgialawyer.com