**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-2120

TINA RAY,

            Plaintiff – Appellant,

    v.

MICHAEL ROANE, in his individual capacity,

            Defendant – Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg. Elizabeth Kay Dillon, District Judge. (5:17-cv-00093-EKD)

Argued: October 30, 2019                                         Decided: January 22, 2020

Before GREGORY, Chief Judge, KEENAN, and RICHARDSON, Circuit Judges.

Reversed and remanded by published opinion. Chief Judge Gregory wrote the opinion, in which Judge Keenan and Judge Richardson joined.

**ARGUED:** Dallas S. LePierre, NEXUS DERECHOS HUMANOS ATTORNEYS, INC., Atlanta, Georgia, for Appellant. Carlene Booth Johnson, PERRY LAW FIRM, PC, Dillwyn, Virginia, for Appellee. **ON BRIEF:** Mario B. Williams, NEXUS DERECHOS HUMANOS ATTORNEYS, INC., Atlanta, Georgia, for Appellant.

GREGORY, Chief Judge:

Appellant Tina Ray appeals the dismissal of her claim brought under 42 U.S.C. § 1983, in which she alleged that her Fourth Amendment rights were violated when Officer Michael Roane shot and killed her dog, Jax. According to the complaint, Roane shot Jax when it was in Ray's yard, tethered, and incapable of reaching or harming Roane. Bound by those facts at this stage of the proceeding, we hold that the complaint plausibly states a claim for an unconstitutional seizure of Ray's property for which Roane is not entitled to qualified immunity. Therefore, we reverse and remand for further proceedings.

I.

At the outset, we acknowledge that there is evidence in the record on appeal that appears to contradict some of the allegations in the complaint. However, because Ray's claims were dismissed for failure to state a claim, we "limit our review to the complaint itself." *Braun v. Maynard*, 652 F.3d 557, 559 (4th Cir. 2011). Further, as we do in any case alleging unreasonable use of force under the Fourth Amendment, we focus on the facts and circumstances confronting the officer "immediately prior to and at the very moment" that force was used, and disregard information not known to the officer at that time. *Greenidge v. Ruffin*, 927 F.2d 789, 792 (4th Cir. 1991). With these principles in mind, the relevant factual allegations in the complaint are straightforward.

On September 24, 2017, Roane drove to Ray's property to assist with an arrest warrant that was being served on Ray for domestic abuse. When Roane arrived on Ray's property, four other officers were already present and parked in the driveway. Ray's dog—

2

a 150-pound German Shepard named Jax—was secured by a zip-lead attached to two trees that allowed the animal limited movement within a "play area" of the yard. Rather than park in the driveway like the other officers, Roane parked his truck within the dog's "play area," prompting the other officers on scene to shout and gesture toward Roane, indicating that he should "[w]ait" and "[l]et [Ray] get her dog." Roane exited his vehicle and started walking toward the house.

As Roane emerged from his vehicle, Jax began barking at and approaching Roane. Roane responded by backing away from the dog and drawing his firearm, while Ray ran to the zip-lead and began shouting Jax's name. "In a short moment," Jax reached the end of the zip-lead and "could not get any closer" to Roane. Roane observed that the dog could not reach him, and further observed that Ray was now holding onto Jax's fully-extended lead and continuing to call Jax's name. Roane therefore stopped backing up. Roane then took a step forward, positioning himself over Jax, and fired his weapon into the dog's head. The dog died from the wound.

In her complaint, Ray asserted four claims for relief against Roane—unlawful seizure of Jax in violation of the Fourth Amendment, violation of substantive due process, conversion, and intentional infliction of emotional distress—seeking various categories of damages. Ray later indicated she would not pursue her substantive due process claim. Roane moved to dismiss the entire action against him and answered the complaint. On September 20, 2018, the district court dismissed Ray's federal claim for unlawful seizure of Jax and declined to exercise supplemental jurisdiction over the remaining two state-law

claims. In so doing, the district court concluded Roane's actions had been reasonable under the totality of the circumstances and he would be entitled to qualified immunity.

As to whether Ray sufficiently alleged that Roane's actions were unreasonable, the district court pointed to several facts in the complaint that led it to conclude the seizure was reasonable: (1) Jax was a large dog weighing approximately 150 pounds; (2) Jax was "alarmed" by Roane's arrival; (3) Jax was "barking while approaching Roane," and Roane responded by moving backward, away from him; and (4) the entire incident took only a "short moment." J.A. 362. The district court also pointed to several allegations it distinguished, such as the fact that Jax had reached the end of his zip-lead and could not reach Roane. According to the district court, "an objectively reasonable officer would have felt threatened in the circumstances immediately preceding the shot and . . . might not have been sure that Jax no longer posed a threat." J.A. 362–63. The important factor was instead Jax's proximity to Roane.

The district court also held that Roane was entitled to qualified immunity. For the same reasons it concluded that Ray failed to allege an unreasonable seizure, the court concluded that a reasonable officer would not have known it was "clearly unreasonable" to shoot Jax in these circumstances. At worst, this was a "classic case" of a bad guess in a gray area or a reasonable but mistaken judgment. J.A. 370. Accordingly, the district court dismissed the entire action with prejudice. Ray now appeals the district's court dismissal.

4

II.

We review a district court's grant of a motion to dismiss *de novo*. *See King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citing *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011)). In reviewing a motion to dismiss for failure to state a claim, we must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* at 212. A complaint need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A Rule 12(b)(6) motion to dismiss 'does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

We also review a qualified immunity-based grant of a motion to dismiss *de novo*. *Id.* at 385 (citation omitted). To determine whether a complaint should survive a qualified immunity-based motion to dismiss, we exercise "sound discretion" in following the two-prong inquiry set forth by the Supreme Court, analyzing (1) whether a constitutional violation occurred and (2) whether the right violated was clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010). A court may consider either prong of the qualified immunity analysis first. *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018).

5

III.

On appeal, Ray argues the district court erred in analyzing both prongs of the qualified immunity analysis. First, she asserts the district court erred dismissing the action and concluding the allegations in the complaint were insufficient to allege Roane unreasonably seized Jax in violation of the Fourth Amendment. Ray then contends, assuming the seizure was unconstitutional, the district court also erroneously concluded Roane was entitled to qualified immunity. We agree with Ray.

A.

As an initial matter, it is well-settled that privately owned dogs are "effects" under the Fourth Amendment, and that the shooting and killing of such a dog constitutes a "seizure." *Altman v. City of High Point, N.C.*, 330 F.3d 194, 203–05 (4th Cir. 2003). Thus, we will affirm the district court's conclusion that the shooting of Ray's dog by Roane was constitutional only if we conclude it was reasonable under the circumstances alleged in the complaint.

"To assess the reasonableness of [a government seizure under the Fourth Amendment], '[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *United States v. Jacobsen*, 466 U.S. 109, 125 (citation omitted). As we held in *Altman*, private interests in dogs—and family pets especially—are highly significant since dogs "have aptly been labeled 'Man's Best Friend,' and certainly the bond between a dog owner and his pet can be strong and enduring." 330 F.3d at 205 ("Many consider dogs to be their most prized personal possessions, and still others think of dogs

6

solely in terms of an emotional relationship, rather than a property relationship."). Likewise, the government undoubtedly has a strong public interest in protecting citizens and officers from dogs that may be dangerous or otherwise a source of public nuisance. *Id.* at 205–06. Thus, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Altman*, 330 F.3d at 205 (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)).

In weighing these competing interests, we focus on the circumstances confronting Roane at the moment he fired his weapon. *Greenidge*, 927 F.2d at 792; *see also Altman*, 330 F.3d at 205–06. Although we view the facts in the light most favorable to Ray, we disregard allegations of subjective intent in the complaint and consider only the information known to Roane at the time of the shooting. *Altman*, 330 F.3d at 205–06; *Greenidge*, 927 F.2d at 792. Our task, as we explained in *Altman*, is to place ourselves in the shoes of Roane and ask whether his actions were objectively unreasonable. *Altman*, 330 F.3d at 205. In other words, we assess whether Roane's asserted justification of officer safety justifies his decision to shoot Jax. *Id.*

Accepting these principles, Roane argues that his actions were objectively reasonable because he was confronted with a 150-pound German Shepard that was "alarmed" by his arrival, barking, and that in a "short moment" had advanced to within a step of him. Under these circumstances, Roane asserts that he reasonably felt threatened by Jax. Roane also cites to numerous cases involving dog shootings in which the officer's

7

conduct was deemed reasonable, despite the fact that the dogs at issue were smaller than Jax or farther from the officer at the time of the shooting. As a result, Roane reasons the district court properly determined Ray's complaint failed to allege a Fourth Amendment violation. We disagree.

The problem with Roane's argument, and thus with the district court's decision adopting it, is that it requires us to ignore certain factual allegations in Ray's complaint and to draw reasonable inferences *against* Ray on a motion to dismiss. *DePaola v. Clarke*, 884 F.3d 481, 484 (4th Cir. 2018) ("In reviewing the defendants' motions to dismiss, we accept as true the factual allegations set forth in [the] complaint and draw reasonable inferences therefrom in [her] favor."). According to the complaint, Roane stopped backing away from Jax when the dog reached the end of the zip-lead, and then took a step toward the dog before firing his weapon. *See* J.A. 15. These factual allegations yield the reasonable inference that Roane observed that the dog could no longer reach him, and, thus, could not have held a reasonable belief that the dog posed an imminent threat. Taking these factual allegations as true and drawing these reasonable inferences in Ray's favor, Roane's seizure of Jax was unreasonable because Jax no longer posed any threat to Roane.

Tellingly, in reaching the opposite conclusion, the district court relied on cases that were all decided on summary judgment involving one or more dogs that, like here, were barking or advancing toward an officer but, unlike here, were unleashed or unrestrained and posed an immediate danger to the officer. *See, e.g.*, *Stephenson v. McClelland*; 632 F. App'x 177, 179 (5th Cir. 2015) (per curiam); *Schutt v. Lewis*, No. 6:12-CV-1697, 2014 WL 3908187, at *1 (M.D. Fla. Aug. 11, 2014); *McCarthy v. Kootenai Cty.*, No. 08-CV-294,

8

2009 WL 3823106, at *1–2 (D. Idaho Nov. 12, 2009); *Dziekan v. Gaynor*, 376 F. Supp. 2d 267, 269 (D. Conn. 2005); *Warboys v. Proulx*, 303 F. Supp. 2d 111, 113 (D. Conn. 2004). The district court's extensive reliance on cases decided on summary judgment underscores our conclusion that the district court did not fully credit the allegations in Ray's complaint and the inferences arising therefrom.

Accordingly, we conclude the district court erred in holding that the complaint failed to allege a violation of Ray's Fourth Amendment rights. We next turn to whether Roane is entitled to qualified immunity at this stage of the litigation.

B.

Qualified immunity "shield[s] [officials] from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *see also Saucier*, 533 U.S. at 201–02. Thus, although we conclude that Ray has plausibly alleged a violation of her constitutional rights, Roane is entitled to qualified immunity unless we conclude that that a reasonable officer in Roane's position would have understood that his conduct was unlawful at the time of the shooting. *Braun*, 652 F.3d at 561.

The question of whether a right is clearly established is a question of law for the court to decide. *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). The question of whether a reasonable officer would have known that the conduct at issue violated that right, however, cannot be decided prior to trial if disputes of the facts exist. *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). Thus, "while the purely legal question of whether the constitutional right at issue was clearly established is always capable of decision at the

9

summary judgment stage [or on a motion to dismiss], a genuine question of material fact regarding [w]hether the conduct allegedly violative of the right actually occurred . . . must be reserved for trial." *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (alteration and omission in original and internal quotation marks omitted) (quoting *Pritchett*, 973 F.2d at 313).

In addition, to determine whether a right was clearly established, we first look to cases from the Supreme Court, this Court, or the highest court of the state in which the action arose. *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004). In the absence of "directly on-point, binding authority," courts may also consider whether "the right was clearly established based on general constitutional principles or a consensus of persuasive authority." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 543 (4th Cir. 2017); *Owens*, 372 F.3d at 279 ("[T]he absence of controlling authority holding identical conduct unlawful does not guarantee qualified immunity."). The Supreme Court has ruled against defining a right at too high a level of generality and held that doing so fails to provide fair warning to officers that their conduct is unlawful outside an obvious case. *White v. Pauly*, 137 S. Ct. 548, 552 (2017).

On appeal, Ray argues that since at least 2003, we have "placed Roane on fair notice/warning that [she] had a clearly established right to enjoy her dog Jax, free from Roane using unreasonable deadly force against Jax," particularly where her dog Jax was secured, controlled, and could no longer reach Roane. According to Ray, Roane's actions—killing a pet while that pet poses no immediate threat of harm to a law enforcement officer—are unreasonable and contravene well-recognized precedents.

10

In response, Roane contends neither our precedents nor the body of case law involving police-dog shooting address the "particularly unusual circumstances" Roane had faced at Ray's home. According to Roane, there is no authority involving "a 150-pound dog that had advanced toward [an officer] to within a step, 'alarmed' and barking"; a "25-foot zip-lead contraption"; or other relevant facts similar to the ones here. As a result, qualified immunity protects "mistakes in judgment" and gives officers like Roane "breathing room to make reasonable but mistaken judgments." Moreover, this Court should not engage in "Monday morning quarterback[ing]" to find an officer, like Roane, "could have or should have done something different."

We disagree with Roane's contentions with respect to qualified immunity, for the same reasons already set forth in our discussion of whether the complaint states a claim for a violation of the Fourth Amendment. Viewing all facts in the complaint and inferences arising therefrom in Ray's favor, it is clear that Roane shot Jax at a time when he could not have held a reasonable belief that the dog posed a threat to himself or others. Accepting these facts, we hold that a reasonable police officer would have understood that killing Jax under such circumstances would constitute an unreasonable seizure of Ray's property under the Fourth Amendment.

We acknowledge that there is no "directly on-point, binding authority" in this circuit that establishes the principle we adopt today. *Booker*, 855 F.3d at 543. Until now, we have never had the occasion to hold that it is unreasonable for a police officer to shoot a privately owned animal when it does not pose an immediate threat to the officer or others. Still, even without "directly on-point, binding authority," qualified immunity is inappropriate if "the

11

right was clearly established based on general constitutional principles or a consensus of persuasive authority." *Booker*, 855 F.3d at 543; *Owens*, 372 F.3d at 279–280. This is such a case.

First, we observe that the unlawfulness of Roane's alleged actions was established by the general principles we espoused in *Altman*. In *Altman*, we held that privately owned dogs are protected under the Fourth Amendment, and further established that the reasonableness of the seizure of a dog depends on whether the governmental interest in safety outweighs the private interest in a particular case. 330 F.3d at 203–05. Based on these broader principles alone, it would have been "manifestly apparent" to a reasonable officer in Roane's position that shooting a privately owned dog, *in the absence of any safety rationale at all*, is unreasonable. *Owens*, 372 F.3d at 279.

The consensus of our sister circuits leaves no doubt that this principle was clearly established by September 2017. *See id.* at 279–280. As the D.C. Circuit observed in 2016, prior to Roane's alleged conduct in this case, "[e]very circuit that has considered the issue . . . ha[s] invariably concluded that 'the use of deadly force against a household pet is reasonable only if the pet poses an immediate danger and the use of force is unavoidable.'" *Robinson v. Pezzat*, 818 F.3d 1, 7 (D.C. Cir. 2016) (citation omitted); *see also Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 568 (6th Cir. 2016) ("[A] police officer's use of deadly force against a dog . . . is reasonable under the Fourth Amendment when . . . the dog poses an imminent threat to the officer's safety."); *Carroll v. Cty. of Monroe*, 712 F.3d 649, 652 (2d Cir. 2013) (noting that the reasonableness of officers' conduct is contingent on there being "a genuine threat to officer safety"); *Viilo v. Eyre*, 547 F.3d 707, 710 (7th

Cir. 2008) ("[C]ommon sense . . . counsel[s] that the use of deadly force against a household pet is reasonable only if the pet poses an immediate danger[.]"); *San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 977–78 (9th Cir. 2005) (holding that "any reasonable officer [would know] that the Fourth Amendment forbids the killing of a person's dog, or the destruction of a person's property, when that destruction is unnecessary"); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210–11 (3d Cir. 2001) ("[T]he state may [not], consistent with the Fourth Amendment, destroy a pet when it poses no immediate danger[.]").

Based on this preexisting consensus of persuasive case law, together with the general principles we announced in *Altman,* we hold that a reasonable officer in Roane's position would have known that his alleged conduct was unlawful at the time of the shooting in this case. *Anderson*, 483 U.S. at 640; *Booker*, 855 F.3d at 543. Thus, we hold that the district court erred in concluding Roane is entitled to qualified immunity at this stage of the litigation.

Notably, Roane does not contest the legal principle we adopt today, namely, that it is unreasonable for an officer to shoot a privately owned dog when the dog poses no objective threat to the officer or others. Instead, Roane's arguments exclusively focus on the underlying facts, and ultimately amount to the factual assertion that Roane reasonably perceived Jax as a threat at the time of the shooting. But this is an appeal from a motion to dismiss, which tests the sufficiency of the complaint, not its veracity. For the reasons discussed above, we cannot accept Roane's version of the facts at this stage of the

13

proceedings, in which we must grant all reasonable inferences in favor of Ray. *DePaola*, 884 F.3d at 484.

## IV.

For the foregoing reasons, we reverse the district court's dismissal of Ray's complaint and remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*

14